2013 BNH 005

___

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:  
Richard Robert Dolinak  
and  
Kathleen McDonnell-Dolinak,  
       Debtors

Bk. No. 12-13500-BAH  
Chapter 13

*Michael S. Askenaizer, Esq.*  
*Law Offices of Michael Askenaizer*  
*29 Factory Street*  
*Nashua, NH*  
*Attorney for Debtors*

*Lawrence P. Sumksi*  
*1000 Elm Street, 10th Floor*  
*Manchester, NH*  
*Chapter 13 Trustee*

## MEMORANDUM OPINION

### I.  INTRODUCTION

The Court has before it Richard Robert Dolinak and Kathleen McDonnell-Dolinak's (collectively, the "Debtors") Motion to Determine Secured Status and Void Wholly Unsecured Lien of Bank of America, N.A. and The Bank of New York Mellon f/k/a The Bank of New York (Doc. No. 22) (the "Motion").  No party responded or objected to the Motion.  On January 18, 2013, the Court heard oral argument and an offer of proof from the Debtors.  The Chapter 13 Trustee did not take a position.  Afterwards, the Court took the matter under advisement.

The issue before the Court is whether the Debtors in this chapter 13 proceeding, who are not eligible to receive a chapter 13 discharge by virtue of having received a chapter 7 discharge

during the 4-year period preceding the petition date in this case, may still void a wholly unsecured junior mortgage on their residence. This is an issue of first impression in the District of New Hampshire, and appears to be an issue of first impression within the First Circuit as well.

      This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334, 157(a), and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTUAL BACKGROUND

      The facts relevant to the Motion are not in dispute.

      The Debtors are joint owners of a single family home located at 235 Curtis Farm Road, Wilton, New Hampshire (the "Property"). The Property is the Debtors' primary residence.

      The Property is encumbered by two mortgages: (1) a first mortgage (the "First Mortgage") held by Homeward Residential (the "First Mortgage Holder"); and (2) a second mortgage (the "Second Mortgage") executed in favor of Countrywide Home Loans, Inc., dated August 1, 2006, and assigned to Bank of America, N.A., and The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWEHQ, Inc. Home Equity Loan Asset Backed Certificates Series 2006-S8 (the "Second Mortgage Holder") by instrument recorded July 18, 2012.

      On December 10, 2009, the Debtors filed a voluntary petition (the "Prior Bankruptcy") in this District under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). See Case No. 09-14834-JMD. Schedule J in the Prior Bankruptcy indicated that the Debtors had monthly net income of -$1,630.92, i.e., a monthly net loss. Schedule F in the Prior Bankruptcy indicated that the Debtors had $110,560.07 in unsecured debt. The Debtors later amended

2

Schedule F to include an additional $11,585.91 in unsecured debt.  The Debtors listed the claims of the predecessors-in-interest of the First Mortgage Holder and the Second Mortgage Holder on Schedule D in the Prior Bankruptcy.  The Debtors did not reaffirm their obligations to the predecessors-in-interest of the First Mortgage Holder or the Second Mortgage Holder during the Prior Bankruptcy.  On April 1, 2010, the Debtors received a discharge by order of the Court under § 727 of the Bankruptcy Code.

On January 31, 2012, after the conclusion of the Prior Bankruptcy, the Debtors and the First Mortgage Holder entered into a home affordable modification agreement (the "HAMP Agreement").  Under the HAMP Agreement, the principal balance due under the lien to the First Mortgage Holder was $249,304.11.  As of September 4, 2012, according to a statement the First Mortgage Holder Transmitted to the Debtors, the balance due was $247,611.16.

On October 10, 2012, the Second Mortgage Holder provided the Debtors with notice of its intent to conduct a foreclosure sale of the Property on November 20, 2012.

On October 18, 2012, the Debtors obtained a market analysis from a realtor, which they submitted along with the Motion.  According to the market analysis, the value of the Property, as of October 18, 2012, was between $185,000 and $190,000. For the purposes of the Motion, the Debtors accept that the Property has a value of $190,000.  Accordingly, the balance due under the First Mortgage, as modified, exceeds the value of the Property by $57,611.16.

On November 16, 2012, the Debtors commenced the present chapter 13 case. According to the Debtors, they filed the case to protect the Property from foreclosure by the Second Mortgage Holder.  Schedule J in the present case indicates that the Debtors have a positive monthly net income of $142.67.  Schedule F in the present case indicates that the Debtors have $7,691.04 in unsecured debt.  The Debtors' chapter 13 plan dated November 16, 2012, proposes

3

to make 36 monthly payments of $150.00.  The plan will also pay any non-exempt proceeds from a currently pending lawsuit the Debtors are pursuing, in an amount sufficient to pay all allowed prepetition unsecured claims and all administrative claims in full.  Although the plan estimates that it will pay unsecured creditors in full, the Second Mortgage Holder will receive no payments because the underlying obligation of the Debtors was discharged in the Prior Bankruptcy.

On December 21, 2012, the Debtors filed the Motion, which requests the entire lien in favor of the Second Mortgage Holder be determined to be unsecured and void in its entirety, subject to the Debtors' compliance with the terms of their chapter 13 plan.

On December 31, 2012, the Second Mortgage Holder filed a proof of claim in the case, stating that it held a secured claim in the amount of $46,441.32 secured by its mortgage lien against the Property.

### III.  DISCUSSION

To determine how the Debtors may treat the Second Mortgage Holder's claim and lien, the Court must determine the nature of the Second Mortgage Holder's claim and what treatment of any such claim is permitted under chapter 13.  The Court will first look to §§ 502 and 506 of the Bankruptcy Code to determine the nature of the Second Mortgage Holder's claim.  The Court will then look to § 1322(b) of the Bankruptcy Code to determine whether the Debtors may void the Second Mortgage Holder's lien through their plan.

**A. Allowance of Claims or Interests Under § 502**

Section 502(a) states, in relevant part, "[a] claim or interest, proof of which is filed under section 501. . . is deemed allowed, unless a party in interest. . . objects." 11 U.S.C. § 502(a). While the Debtors discharged their *in personam* liability to the Second Mortgage Holder in their Prior Bankruptcy, the Second Mortgage Holder maintained its *in rem* rights against the Property. See 11 U.S.C. § 524(a)(2). The Second Mortgage Holder timely filed a proof of claim listing a claim secured by the Property. See Court's Claims Register, Claim No. 1. No party has objected to that claim. Under the Bankruptcy Code, a "claim against the debtor" includes claims against property of the debtor. 11 U.S.C. § 102(2). Accordingly, the Second Mortgage Holder holds an allowed claim.

**B. Determination of Secured Status Under § 506**

Section 506(a)(1) states, in relevant part, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest. . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property. . . and is an unsecured claim to the extent that the value of such creditor's interest. . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1). As the First Circuit Bankruptcy Appellate Panel has explained, "an allowed secured claim cannot exceed the value of the collateral." Domestic Bank v. Mann (In re Mann), 249 B.R. 831, 833 (B.A.P. 1st Cir. 2000).

In Nobelman v. American Savings Bank, 508 U.S. 324, 328-329 (1993), the Supreme Court confirmed that § 506(a) is the controlling provision that allows a court to determine the status of a creditor's secured claim, based on a judicial valuation of the underlying collateral. The subject mortgage in Nobelman was partially secured, which made the creditor the holder of

5

a secured claim in an amount of the available value, and the holder of an unsecured claim for the balance of its claim.  Id. at 329.

In determining the same issue before the Court in this case, the Fourth Circuit Court of Appeals reaffirmed that "a claim's status as secured or unsecured depends on the value of the collateral."  Branigan v. Davis (In re Davis), 2013 WL 1926407 at *4 (4th Cir. May 10, 2013). Thus, it is the court's valuation of the collateral and the extent of any senior liens that determines whether the claim of the Second Mortgage Holder is secured or unsecured, regardless of how the proof of claim describes the claim.

The undisputed evidentiary record in this case establishes that the Property has no value in excess of the First Mortgage.  In fact, the balance of the First Mortgage well exceeds the value of the Property.  Accordingly, the Second Mortgage Holder's claim is not secured, in whole or in part, because the Second Mortgage Holder is "out of the money."

After the discharge in the Prior Bankruptcy, the Second Mortgage Holder retained its *in rem* rights against the Property, which included its lien and the right to foreclose[1].  11 U.S.C. § 524(a)(2).  However, without any collateral value to support those rights, it is difficult to assign those rights any value at all in the pending chapter 13 case.  See Mann, 249 B.R. at 837-38.  As one court colorfully put it, such rights are "illusory, hyper-technical, and possibly relevant only in law review articles."  In re Woodhouse, 172 B.R. 1, 2 (Bankr. D.R.I. 1994).  In bankruptcy cases, "a completely valueless lien is classified as an unsecured claim under section 506(a)." Davis, 2013 WL 1926407 at *4.  Accordingly, the Second Mortgage Holder holds an unsecured claim in this case.  Because the claim is based solely upon the Second Mortgage Holder's lien

---

[1] In other words, the discharge extinguished the Second Mortgage Holder's rights under the note.  The Second Mortgage itself "rode through."

6

rights under a completely unsecured mortgage, and not also under a promissory note, no distribution need or may be made under a chapter 13 plan on account of the claim. However, because the Second Mortgage Holder has an allowed claim, the chapter 13 plan may provide for its treatment in this chapter 13 proceeding.

### C. Treatment of the Second Mortgage Holder's Claim and Lien in the Chapter 13 Plan

Section 1322(b) governs what a chapter 13 plan may do. Subsection (b)(2) states that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2).

Under Nobelman and Mann, § 1322(b)(2)'s protection from modification does not apply to a wholly unsecured junior lien-holder, regardless of whether the lien is on the debtor's principal residence. As discussed above, a wholly unsecured junior lien-holder holds only an unsecured claim in a bankruptcy case. Accordingly, in this district (and in most others), a debtor may avoid, or "strip-off," wholly unsecured junior liens by completing a chapter 13 plan. Mann, 249 B.R. at 840; Fisette v. Keller (In re Fisette), 455 B.R. 177, 182 (B.A.P. 8th Cir. 2011) (collecting cases). This concept is not particularly controversial, and this Court routinely hears motions "to determine secured status and void wholly unsecured liens." The most common dispute arising from such motions regards the valuation of the underlying property and whether or not the lien-holder is wholly unsecured or partially unsecured. According to Nobelman and its progeny, § 1322(b)(2) prevents a debtor from modifying the rights of a *partially* unsecured junior lien-holder. Mann, 249 B.R. at 837.

7

### D. Lien Stripping in Chapter 20 Cases

When a debtor files a chapter 7 case, receives a discharge, and subsequently files a chapter 13 case, the process is colloquially referred to as a "chapter 20."  See Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 179.1, at ¶ 13, Sec. Rev. June 15, 2004, www.Ch13online.com.  When a debtor has received a discharge in a prior chapter 7 case filed within the four-year period preceding the petition date of the subsequent chapter 13 case, the Bankruptcy Code bars a court from granting the debtor a discharge in the chapter 13 case.  11 U.S.C. § 1328(f)(1).

Courts are split over whether a chapter 20 debtor who is ineligible to receive a discharge in his or her chapter 13 may nonetheless avoid a wholly unsecured junior lien without paying the underlying *in rem* liability in full.  As the Bankruptcy Court in In re Jennings, 454 B.R. 252, 256-57 (Bankr. N.D. Ga. 2011) notes, there are three prevailing approaches:

> In the first approach courts hold that chapter 20 lien stripping is impermissible because it amounts to a de facto discharge.  These courts rely on Dewsnup[2] and Congress's inclusion of a discharge requirement in section 1325(a)(5), and treat the wholly underwater second mortgagee as a holder of a secured claim.  Courts that adopt the second approach permit chapter 20 lien stripping; however after plan consummation, without a discharge, the parties' pre-bankruptcy rights are reinstated.  These courts contend that discharge is the mechanism that voids the lien and that chapter 20 plans end in dismissal.  The courts utilizing the third approach allow chapter 20 lien stripping because nothing in the Bankruptcy Code prevents it.  These courts contend that the mechanism that voids the lien is plan completion and that chapter 20 cases end in administrative closing.
> (internal citations omitted)

Adopting the first approach, the court in Lindskog v. M&I Bank (In re Lindskog), 451 B.R. 863, 866 (Bankr. E.D. Wisc. 2011), reasoned that stripping a lien in a chapter 20 case

---

[2] Dewsnup v. Timm, 502 U.S. 410 (1992).

amounts to an "end run" around § 1328(f)(1)'s prohibition of a discharge. However, the Bankruptcy Code does not equate lien stripping with a discharge. A discharge only affects *in personam* liability, and the provisions dealing with liens, i.e., *in rem* liability, are separate and distinct from the provisions dealing with the discharge. Compare 11 U.S.C. § 524(a)(2), with 11 U.S.C. § 522(f), and 11 U.S.C. § 545. Moreover, the Bankruptcy Code allows debtors to avoid liens in other contexts in the absence of a discharge, such as avoiding judicial liens that impair a debtor's exemptions. In re Allen, 217 B.R. 945, 950 (Bankr. M.D. Fla. 1998) (explaining that a debtor "may avoid a lien even after his discharge has been denied").

Courts that adopt the first approach often reason further that § 1325(a)(5)(B)(i)(I) prohibits lien stripping in the absence of a discharge. Lindskog, 451 B.R. at 866. That subsection[3] allows holders of *allowed secured* claims to retain their liens until the earlier of

---

[3] Subsection (5) states:
(5) with respect to each allowed secured claim provided for by the plan--
    (A) the holder of such claim has accepted the plan;
    (B) (i) the plan provides that--
        (I) the holder of such claim retain the lien securing such claim until the earlier of--
            (aa) the payment of the underlying debt determined under nonbankruptcy law; or
            (bb) discharge under section 1328; and
        (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
      (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
      (iii) if--
        (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
        (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
    (C) the debtor surrenders the property securing such claim to such holder

payment of their debts in full, or a discharge under § 1328. 11 U.S.C. § 1325(a)(5)(B)(i)(I) (emphasis added). However, the reasoning of the first approach does not give sufficient weight to the language of the statute. Section 1325(a) provides for the treatment of allowed secured claims. A creditor that holds a valueless lien does not – and by the terms of § 506(a)(1) cannot – have an allowed secured claim. Such a creditor can only have an unsecured claim in bankruptcy. Therefore, § 1325(a), by its express terms, does not apply to wholly unsecured liens, which are unsecured claims. Fisette, 455 B.R. at 186 (internal citations omitted).

Some courts that adopt the first approach also find that the Supreme Court's ruling in Dewsnup v. Timm, 502 U.S. 410 (1992), prohibits lien stripping in the absence of a discharge. See Lindskog, 451 B.R. at 866. Dewsnup made three primary conclusions: (1) § 506(d) does not allow a party to "strip down" a partially secured lien; (2) liens pass through bankruptcy unaffected; and (3) any increase over the judicially determined valuation during bankruptcy accrues to the benefit of the creditor. Dewsnup, 502 U.S. at 417.

The first conclusion is well-taken. Section 506, by itself, does not allow a party to strip down or strip off a lien. Only operative sections, such as § 1322, can be used to affect liens[4]. The second conclusion presents the *general* rule that liens are unaffected by bankruptcy or a discharge. However, as discussed above, several sections of the Bankruptcy Code clearly allow liens to be stripped down, stripped off, or avoided. The third conclusion again states a general rule, namely, that if collateral values change during the pendency of a bankruptcy case, the

---

[4] This was, perhaps, the core ruling in Dewsnup: a chapter 7 debtor cannot strip down or strip off a lien by "using" § 506(d). However, a chapter 13 debtor may strip off a lien by completing a plan that complies with § 1322.

10

secured creditor is entitled to any benefit resulting from the change.  The Court notes that in the present case, the First Mortgage is undersecured by more than $50,000, and it is unlikely that the balance of the First Mortgage will decrease sufficiently over the 36-month term of the Debtors' plan to cause the Second Mortgage Holder's claim to become even partially secured.  Moreover, if the chance of property appreciation precluded lien avoidance, "no final determination could ever be made in a bankruptcy case."  Mann, 249 B.R. at 838 (internal citations omitted).

Finally, the Court notes that Dewsnup involved chapter 7 debtors seeking to "avoid" a *partially* unsecured lien on real property, using only the provisions of §§ 502 and 506, and is thus of limited guidance in the context of chapter 13, which contains specific provisions allowing debtors to strip down or strip off liens.  Accordingly, this Court shall not follow the first approach.

Courts that adopt the second approach reason that, while a chapter 20 debtor may propose and confirm a plan that strips off a wholly unsecured second mortgage, the lien is reinstated when, after the completion of the plan, the court dismisses the case[5].  See In re Winitzky, 2009 Bankr. LEXIS 2430 at *10 (Bankr. C.D. Cal. May 7, 2009).  This approach is consistent with § 349(b)(1)(C), which reinstates avoided liens[6] when a court dismisses a case, but assumes that the only way a chapter 20 ends is through dismissal.  This Court does not agree with that assumption. Nothing in the Bankruptcy Code or Rules states that the only way a no-

---

[5] To the extent courts that adopt the second approach look to § 1325(a)(5)(B)(i)(I) for the requirement that a discharge enter before a lien can be avoided, this issue has been addressed above.

[6] The subsection actually refers to "any lien avoided under section 506(d). . ."  However, as discussed above, Dewsnup states that liens are not avoided under that section.  It is thus unclear what the subsection refers to, if anything, after Dewsnup.

11

discharge chapter 13 ends is through dismissal.  In an analogous context, chapter 7 cases in which the debtor fails to complete a personal financial management course as required by § 727(a)(11) are closed without discharge, not dismissed.  See Fed. R. Bankr. P. 4006.  Similarly, if a debtor waives his or her discharge under § 727(a)(10), this Court will generally close the case after it is fully administered, not dismiss it.  This Court shall not follow the second approach.

      This Court joins those courts that adopt the third approach.  As discussed above, "nothing in the Bankruptcy Code conditions a Chapter 13 debtor's ability to modify a wholly unsecured creditor's lien under § 1322(b) on his eligibility for a discharge." Fisette, 455 B.R. at 185 (internal citations omitted).  As a result, "the analysis permitting lien-stripping in Chapter 20 cases is no different than that in any other Chapter 13 case."  Davis, 2013 WL 1926407 at *7.  Section 1328(f)(1) only prevents a chapter 20 debtor from receiving a discharge; it does not limit a chapter 20 debtor's rights under § 1322(b).  Fisette, 455 B.R. at 185. Where the underlying collateral has no value to support a lien-holder's claim, the creditor cannot have an allowed secured claim, and § 1325(a)(5), which would require a discharge to strip certain liens, does not apply.  Id. at 186.

      In a chapter 20 case, lien avoidance becomes permanent when the debtor successfully completes all payments under a confirmed plan, and the case is closed.  In re Okosisi, 451 B.R. 90, 100 (Bankr. D. Nev. 2011).  This determination may appear to be contrary to this Court's Local Bankruptcy Rule 3012-1(d) and Local Bankruptcy Form 3012-1A, both of which state that a lien is avoided "only upon completion of the debtor's plan of reorganization and the court's issuance of a discharge under 11 U.S.C. § 1328(a) or 11 U.S.C. § 1141(d)(5)."  The adoption of

this local rule was not based on any policy or Bankruptcy Code provision requiring a discharge to void a wholly unsecured junior mortgage. Rather, the local rule was adopted to facilitate the voiding of such mortgages once a debtor successfully completes a chapter 13 plan. The requirement for the issuance of a discharge was included in the Court's local rule and procedures as evidence of plan completion, not as a substantive requirement. The order entering a chapter 13 discharge would also be proof that the case had not been converted. See 11 U.S.C. § 348(f)(1). This would prevent the need for a debtor in the typical case to return to the Court – incurring additional expenses and using scarce judicial resources – for a separate order stating simply that the debtor had completed all payments. The issuance of the discharge itself is not a condition precedent for lien avoidance. In this case, the Debtors will need to return to court to seek an order determining completion of their confirmed chapter 13 plan of reorganization and confirming the voiding of the Second Mortgage lien.

**E. Good Faith Requirement.**

While the Court has determined that a chapter 20 debtor may strip off a wholly unsecured lien, the Debtors must, as any chapter 13 debtor must, be able to show that their chapter 13 plan was proposed in good faith. 11 U.S.C. § 1325(a)(3). This is a separate requirement in the confirmation of all chapter 13 plans, and the circumstances of a chapter 20 case warrant a careful inquiry by the Court. In the First Circuit, courts use a totality of the circumstances approach to investigate good faith under § 1325. Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir. 2012). The approach "cannot be reduced to a mechanical checklist." Id. Good faith is a fact-sensitive determination a court must make on a case-by-case basis. Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474, 482 (1st Cir. 2005).

Based upon the Debtors' uncontested offer of proof, this Court finds the following circumstances of this case relevant to a determination of good faith:

1. <u>Stripping a Lien is Not the Debtors' Sole Reason for Proposing their Plan</u>

At least one bankruptcy court has suggested that a chapter 13 plan proposed solely for the purposes of stripping a lien is an indication of bad faith. <u>In re Tran</u>, 431 B.R. 230, 237 (Bankr. N.D. Cal. 2010). This Court expresses no opinion on this conclusion, other than to note that the Debtors in this case had accumulated a meaningful amount of unsecured debt between their bankruptcy cases, which their current plan proposes to pay in full. The Debtors' plan thus accomplishes more than simply stripping the Second Mortgage lien.

2. <u>The Timing and Circumstances of the Subsequent Cases Do Not Indicate a Scheme to Manipulate the Bankruptcy System</u>

The proximity in time between the Debtors' chapter 7 and chapter 13 cases is another factor relevant to a determination of good faith. <u>See</u> <u>Keach v. Boyajian (In re Keach)</u>, 243 B.R. 851, 854 at n.7 (B.A.P. 1st Cir. 2000) (listing eleven non-exclusive factors relevant to good faith). Here, there was an interval of nearly three years between the Debtors' petition dates. Nothing in the record indicates that the Debtors undertook their successive filings in an effort to manipulate the bankruptcy system. On the contrary, it is reasonable to conclude that if the Second Mortgage Holder had not commenced foreclosure proceedings, the Debtors would not have filed the current petition.

Another factor relevant to good faith is whether a debtor seeks to accomplish in a chapter 20 what would not have been possible in either chapter 7 or chapter 13 standing alone. <u>Id.</u> Here, the Debtors could have stripped off the Second Mortgage lien in their Prior Bankruptcy, had it

been a chapter 13. However, with no disposable income at the time of the Prior Bankruptcy, chapter 13 was not a valid option for the Debtors.

        3.        <u>The Benefit to the Debtors is Not Unfair Relative to the Treatment of Creditors</u>

Chapter 13 is, at base, a bargain between debtors and creditors. <u>In re Klaven</u>, 2012 WL 2930865 at *1 (Bankr. D. Mass. July 18, 2012), <u>citing</u> <u>In re Amos</u>, 452 B.R. 886, 894 (Bankr. D.N.J. 2011). Here, the Debtors propose to pay their unsecured creditors – not including the Second Mortgage Holder[7] – 100% of their debts. As a result, the Debtors will be able to strip off the Second Mortgage lien. While the Debtors will benefit from stripping off the Second Mortgage lien, that lien is effectively worthless. Based on the values before the Court, if the Second Mortgage Holder were to foreclose, it would realize less than nothing: a recovery of $0 after payment of the First Mortgage and the cost of the foreclosure. As a result, the "bargain" in this case supports a finding of good faith.

Accordingly, the Court finds that the totality of the circumstances of this case support a finding of good faith. The Court is careful to note the circumstances that allow a chapter 20 debtor to strip off a wholly unsecured second mortgage lien are narrow. However, this Court will not prevent an honest debtor from accomplishing what the plain language of the Bankruptcy Code allows based on the threat of future abuse. <u>See</u> <u>Mann</u>, 249 B.R. at 839 ("[I]t is not logical to bar the legitimate use of a remedy by many honest debtors simply because some scoundrel may abuse it.").

---

[7] By virtue of the Prior Bankruptcy, the Second Mortgage Holder is not entitled to recover from the Debtors in the present case.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that the Debtors, who are not eligible to receive a chapter 13 discharge by virtue of having received a chapter 7 discharge during the 4-year period preceding their petition date, may still void the wholly unsecured Second Mortgage.  The Court further finds that the Debtors have proposed their chapter 13 plan in good faith. The avoidance of the Second Mortgage lien will become permanent if and when the Debtors successfully complete all payments under their plan, and the case is closed.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue separate orders, consistent with this opinion, granting the Motion and confirming the Debtors' chapter 13 plan.

ENTERED at Manchester, New Hampshire.


Date:   June 28, 2013                            /s/ J. Michael Deasy
                                                 J. Michael Deasy
                                                 Bankruptcy Judge